UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JOHN ADESALU,                           )
                                        )
       Plaintiff,                       )
                                        )
  v.                                    )   Civil Action No. 07-2187 (PLF)
                                        )
MICHAEL J. COPPS, Acting Chairman,      )
  United States Federal                 )
  Communications Commission,            )
                                        )
       Defendant.[1]                    )
_____)


OPINION

      Plaintiff John Adesalu is an economist who works for defendant, the Federal Communications Commission ("FCC"). He brings suit against his employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., alleging that it has on various occasions discriminated against him on the basis of his race, color and national origin. The matter is before the Court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. After careful consideration of all the parties' papers, the relevant case law and the entire record in this case, the Court will grant defendant's motion.[2]

---

    [1]    Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes as defendant the Acting Chairman of the FCC, Michael J. Copps, for former Chairman Kevin J. Martin.

    [2]    The Court considered the following papers in connection with this motion: the Complaint ("Compl."); Defendant's Motion for Summary Judgment ("Mot."); Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opp."); and Defendant's Reply to

I.  BACKGROUND

Plaintiff, a black male of Nigerian origin, is employed as an Industry Economist in the FCC's Industry Analysis and Technology Division.  See Mot., Statement of Material Facts For Which There Is No Genuine Issue ("Def. Facts") ¶ 1; Opp., Declaration of John Adesalu ("Adesalu Decl.") ¶¶ 1, 3.  Plaintiff has been paid at the GS-13 grade level for the duration of his FCC tenure.  See Def. Facts ¶¶ 3, 6; Adesalu Decl. ¶ 6.  During that time, plaintiff has received three within-grade "step" increases from GS-13, step 5 to GS-13, step 8.  See Def. Facts ¶ 14.

The GS-13 level is the full performance level of plaintiff's position, meaning that it is the highest grade level of his career ladder to which he may be promoted without competing with other individuals or receiving a non-competitive promotion through accretion of duties.  See Def. Facts ¶¶ 3-4.  Thus, to obtain promotion to the GS-14 level, plaintiff either had to (1) apply for a competitive vacancy and be selected, or (2) request a desk audit to determine whether he is performing work at the GS-14 level and, if so, request that he be promoted non-competitively.  See Def. Facts ¶ 7.  Plaintiff states that he applied for competitive FCC vacancies at the GS-14 and GS-14/15 levels on January 25, 2002, March 9, 2004, and July 15, 2004, and that he was not selected for any of them.  See Adesalu Decl. ¶¶ 18-19.  Defendant does not have records of the January 25, 2002 or July 5, 2004 applications, but confirms that plaintiff applied for a vacant position on March 9, 2004 and was not hired.  See Mot., Ex. 3 (Declaration of Noelle M. Green) ("Green Decl.") ¶¶ 3-4.  Plaintiff also states that in or about May 2004, one of his supervisors,

---

Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Reply").

Rodger Woock, made a promise that plaintiff could be promoted within two years depending on the quality of his work. See Adesalu Decl. ¶ 25. On December 2, 2005, Mr. Woock informed plaintiff that he would not be promoted. See id.

Plaintiff believes that the FCC did not promote him because he is black and Nigerian. See Compl. ¶ 4. He identifies other Industry Economists, all of whom are not black or Nigerian, who have been promoted during his employment at the FCC. See Adesalu Decl. ¶ 8. Plaintiff initiated contact with an Equal Employment Opportunity ("EEO") counselor on December 22, 2005. See Def. Facts ¶ 18. He filed a formal administrative complaint against the FCC on March 20, 2006, alleging that he had "not been promoted for over 10 years," and that he was "repeatedly denied promotions because [he was] black and because of [his] national origin." See id. ¶ 19. Plaintiff filed suit in this Court on December 4, 2007, alleging discrimination on the basis of race, color and national origin.

## II. STANDARD OF REVIEW

Summary judgment may be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or

unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).

An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). He is required to provide evidence that would permit a reasonable jury to find in his favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support his claims." Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

III. DISCUSSION

*A. Exhaustion of Administrative Remedies*

Federal employees must exhaust their administrative remedies before filing suit under Title VII. See 42 U.S.C. § 2000e-16(c); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); Pickett v. Potter, 571 F.Supp. 2d 66, 69 (D.D.C 2008). Employees who allege discrimination must consult with an agency EEO counselor before filing a written complaint with the agency accused of discriminatory practices. See 29 C.F.R. § 1614.105(a); 29 C.F.R. § 1614.106(a)-(c). A complainant "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). The agency must then investigate the matter, after which the complainant may demand an immediate final decision from the agency or a hearing before an EEOC administrative judge. See 29 C.F.R. § 1614.106(e)(2); 29 C.F.R. § 1614.108(f). A complainant may file a civil action after receiving a final decision from the agency or after a complaint has been pending before the EEOC for at least 180 days. See 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407. "Complainants must timely exhaust these administrative remedies before bringing their claims to court." Bowden v. United States, 106 F.3d at 437; see Pickett v. Potter, 571 F.Supp. 2d at 69 ("Federal employees must

exhaust their administrative remedies before filing suit under Title VII."). As this Court discussed in Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132 (D.D.C. 2004), *amended in part on other grounds*, 400 F. Supp. 2d 257 (D.D.C. 2005), the Supreme Court's decision in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), established that "each discrete adverse employment action individually triggers Title VII's procedural requirements," so that a plaintiff alleging more than one discrete discriminatory action "must exhaust the administrative process [with respect to each allegedly discriminatory action] regardless of any relationship that may exist between those discrete claims and any others." Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d at 137-38 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 114).

        Plaintiff identifies four allegedly discriminatory employment decisions by the FCC — three formal rejections of applications that he made for competitive Industry Economist vacancies at the GS-14 and GS-14/15 levels on January 25, 2002, March 9, 2004 and July 15, 2004, see Adesalu Decl. ¶ 18, and one informal decision, when Mr. Woock allegedly retracted a promise of promotion on December 2, 2005. See id. ¶ 25.[3] Defendants argue that the first three decisions, the formal rejections of plaintiff's applications for promotion, are time-barred because plaintiff did not timely contact an EEO counselor. In an attempt to maintain these claims as

---

[3] In his declaration, plaintiff also states that "[i]n 2006 I applied for a GS-15 vacancy in the IATD. In 2007, I applied for a GS-15 vacancy in the Office of Strategic Policy." Adesalu Decl. ¶ 18. Plaintiff does not give any additional details about these applications, such as what positions they were for or the dates on which he submitted the applications, nor does he rely on these applications in his complaint for non-promotion or in his opposition to summary judgment other than to state: "The Agency continues to discriminate against me." Id. ¶ 31. Such vague assertions are insufficient to defeat summary judgment.

viable, plaintiff argues that they form one continuing violation of Title VII.  Under the theory advanced by plaintiff, he may recover for allegedly discriminatory conduct falling outside the applicable charging period if that conduct forms part of one indivisible discriminatory practice and at least one act in furtherance of that practice took place within the applicable charging period.  See Coghlan v. Peters, 555 F. Supp. 2d 187, 203 (D.D.C. 2008) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 111-18).

Generally speaking, at least since the Supreme Court's decision in Morgan, the continuing violation theory is restricted to claims akin to hostile work environment claims because those violations — unlike a discrete act such as firing or failing to promote an employee — "cannot be said to occur on any particular day."  Coghlan v. Peters, 555 F. Supp. 2d at 203 (citing Nat'l R.R. Passenger Corp. v. Morgan at 115, 117; Haynie v. Veneman, 272 F. Supp. 2d 10, 16-17 & n.4 (D.D.C. 2003)).  Morgan makes it clear that courts should not treat such individual incidents of alleged discrimination as part of a discriminatory pattern for exhaustion purposes: "Discrete acts such as termination, *failure to promote*, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice.'"  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 114 (emphasis added).  Plaintiff must have exhausted the administrative process as to each of these alleged incidents before bringing suit in this Court.  See Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d at 138 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 114).

It is undisputed that plaintiff first contacted an EEO counselor on December 22, 2005.  See Def. Facts ¶ 18; Mot., Ex. 6.  Accordingly, if plaintiff "knew or should have known"

of the non-promotion decisions before November 7, 2005, 45 days prior to this initial contact, they are time-barred. Coghlan v. Peters, 555 F. Supp. 2d at 200. Plaintiff learned that he had not been selected for the position that he applied for on March 9, 2004 by letter of March 29, 2004. See Green Decl. ¶ 4. Accordingly, this non-promotion claim is time-barred.

Neither party has been able to produce evidence of the date on which plaintiff learned that he had not been selected for the positions he applied for on January 25, 2002 and July 15, 2004. See Green Decl. ¶ 3. The 45 day time period to initiate contact with an EEO counselor begins to run when an employee has a "reasonable suspicion" of a discriminatory action. See Aceto v. England, 328 F.Supp. 2d 1, 7 (D.D.C. 2004). Defendant suggests that plaintiff must have had a reasonable suspicion that he had not been hired after one year had passed from the date of his applications for these positions. See Mot. at 15. Plaintiff does not dispute this suggestion, and in fact states that he chose not to file EEO complaints in 2003 and 2004 after his non-promotions. See Adesalu Decl. ¶¶ 29-30. Allowing a one-year time period after the application dates for plaintiff to have learned of — or to have had a "reasonable suspicion" of — his non-selection leads to the conclusion that plaintiff would have had at least a reasonable suspicion that he had not been selected by January 25, 2003 and July 15, 2005, respectively. And, as noted, he first contacted an EEO counselor on December 22, 2005. Accordingly, plaintiff's claims for non-promotion stemming from the January 25, 2002 and July 15, 2004 applications are time-barred. The only remaining incident of alleged non-promotion occurred on December 2, 2005, when Mr. Woock allegedly rescinded an earlier promise to promote plaintiff. Plaintiff timely raised this claim before the EEO counselor.

8

*B. The December 2, 2005 Non-Promotion*

Title VII provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff offers no direct evidence that the December 2, 2005 decision to retract the promise was discriminatory. His disparate treatment claims therefore must be analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Moncada v. Peters, 579 F. Supp. 2d 46, 53 (D.D.C. 2008) (citing Barnette v. Chertoff, 453 F.3d 513, 515 (D.C. Cir. 2006)). Under that framework, a plaintiff must first establish a *prima facie* case of discrimination. See Moncada v. Peters, 579 F. Supp. 2d at 53 (citing Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149 (D.C. Cir. 2004)). "Doing so creates a rebuttable presumption of discrimination and 'triggers the employer's burden to produce admissible evidence that, if believed, would establish that the employer's action was motivated by a legitimate, nondiscriminatory reason.'" Moncada v. Peters, 579 F. Supp. 2d at 53 (quoting Teneyck v. Omni Shoreham Hotel, 365 F.3d at 1151). If the employer can meet this burden, then all presumptions drop away and the Court determines "'whether intentional discrimination may be inferred from all the evidence before the trier of fact,' including any evidence that the employer's asserted reasons are pretextual." Moncada v. Peters, 579 F. Supp. 2d at 53 (quoting Teneyck v. Omni Shoreham Hotel, 365 F.3d at 1151).

As the United States Court of Appeals for the District of Columbia Circuit has explained, however, "the district court need not — *and should not* — decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas" at the summary judgment stage if the plaintiff "has suffered an adverse employment action, and [the defendant] has asserted a legitimate, non-discriminatory reason for the decision." Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).

> Rather . . . in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [any statutorily prohibited factors]?

Id.  While Brady directs the district court's focus to the employer's proffered non-discriminatory reason, the Court still first must determine whether plaintiff has suffered an adverse employment action.  See id.

Defendant argues that because Mr. Woock never had the authority to promote plaintiff to a GS-14 position, plaintiff's assertion that Mr. Woock promised such a promotion and later rescinded it is not an actionable adverse employment action.  See Mot., Ex. 1 (Declaration of Valerie P. Brock) ¶ 8; Ex. 4 (Declaration of Rodger Woock) ¶ 3.  Plaintiff does not dispute defendant's assertion that in order to be promoted to a GS-14 level, he was required to participate in a competitive promotion process or request a desk audit to determine that he should be promoted non-competitively through accretion of duties.  Even if Mr. Woock did promise plaintiff that plaintiff would be promoted, and later rescinded that promise, Mr. Woock never had

the authority to fulfill this promise; thus defendant's maintenance of plaintiff at his current grade is not an adverse employment action.  See Boyd v. Snow, 335 F. Supp. 2d 28, 36-37 (D.D.C. 2004).

In addition, defendant has proffered undisputed evidence that there were no vacant positions for competitive promotion to GS-14 Industry Economists during the relevant time period.  See Def. Facts ¶ 9.[4]  The other employees who were promoted were either promoted to a different grade (GS-15), see Adesalu Decl. ¶ 8, or were on a different career ladder, and thus were eligible for non-competitive promotion to GS-14.  See Def. Facts ¶¶ 12-13.  Plaintiff has proffered no evidence to show that there was a vacant position for which he was eligible in the time period for which he administratively exhausted his claims.  Plaintiff could not have suffered an adverse employment action for failure to promote when there were no available vacancies.[5]

---

[4]  In his response to defendant's Statement of Material Facts for Which There is No Genuine Issue, plaintiff states that this fact is "denied," but he cites no record evidence in support of this denial.  See Opp., Plaintiff's Response to Defendant's Statement of Material Facts ¶ 9.  This response does not comport with Local Civil Rule 7(h)(1), which requires that "[a]n opposition to [a motion for summary judgment] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  L. CIV. R. 7(h)(1).  Moreover, it is incumbent on the nonmovant who asserts such a fact to provide depositions, affidavits or other competent evidence in support of the factual assertion if he is to defeat summary judgment.  See supra at 4-5. As explained above, the promotions that plaintiff does identify either were to a different grade level or for employees in a different career ladder.

[5]  The parties dispute whether plaintiff ever requested a desk audit in order to be non-competitively promoted to a GS-14 level.  Defendant states that there "is no evidence that plaintiff requested a desk audit at any time during the relevant time period of this action."  Mot. at 21.  Plaintiff states that he requested "numerous supervisory audits of my work and met with my supervisors . . . on many occasions to obtain a promotion through accretion of duties,"

See Yarber-Butler v. Billington, 53 Fed. App'x. 120, 120 (D.C. Cir. 2002) ("Failure to promote is generally an adverse action . . . but not if there is no open position."); see also Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000) (to establish a *prima facie* case for non-selection, plaintiff must show there was a "vacancy in the job sought."); Hayslett v. Perry, 332 F. Supp. 2d 93, 100 (D.D.C. 2004) ("Lacking evidence of an available position, plaintiff cannot establish a prima facie case of employment discrimination based on non-promotion."). Therefore, the Court must conclude that plaintiff did not suffer an adverse employment action.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant defendant's motion for summary judgment. An Order consistent with this Opinion will be issued this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: March 31, 2009

---

although he does not provide any additional details or even a statement that he ever completed a formal desk audit procedure. See Adesalu Decl. ¶ 24.  Accordingly, plaintiff has not met his burden to defeat summary judgment by "set[ting] out specific facts" showing a genuine issue for trial. FED. R. CIV. P. 56(e); see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  Even if the Court treated plaintiff's assertions as sufficient evidence to defeat summary judgment, plaintiff does not dispute defendant's proffered evidence that if plaintiff had requested a desk audit, his work performance was not sufficient to warrant promotion. See Motion at 21-22, Ex. 2 (Declaration of Alan I Feldman) ¶¶ 4-5.

12